IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| AMES CONSTRUCTION, INC., | ) | CV-08-164-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | ORDER |
| INTERMOUNTAIN INDUSTRIAL, | ) | |
| INC. and MAXUM INDEMNITY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| INTERMOUNTAIN INDUSTRIAL, | ) | |
| INC., | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| WESTERN STATES INSURANCE | ) | |
| AGENCY, INC., | ) | |
| | ) | |
| Third Party Defendant. | ) | |
| _____ | ) | |

1

# I.  Introduction

Plaintiff, Ames Construction, Inc. ("Ames"), brought this case against Intermountain Industrial, Inc. ("Intermountain") and Maxum Indemnity Company ("Maxum).  Ames alleged that Intermountain failed to obtain insurance for Ames as required in a contract between the parties.  As a secondary matter it asserts that Maxum was required to defend Ames in an underlying state lawsuit.  After being sued, Intermountain filed a third-party complaint against Western States Insurance Agency, Inc. ("Western States"), its local insurance agent which obtained the insurance policy at issue from Maxum.  Intermountain claims that Western States' actions and failure to act led to Ames being denied coverage by Maxum when it was joined in the frey.  Maxum filed a counter claim against Ames seeking a declaratory judgment that it had no duty to defend Ames in the underlying state case.  Western States also filed a third-party complaint against Maxum, seeking a declaratory judgment that Maxum had a duty to defend Ames.  The parties have filed motions and cross-motions for summary judgment as to whether Maxum had a duty to defend Ames in the state action.[1]  For the reasons set forth below the

---

[1] Ames' brief also included an argument that Intermountain is in breach of contract if Ames is not covered by the Policy.  However, pursuant to the parties' stipulation, the Court ordered that this portion of Ames' motion shall be held in abeyance pending the decision as to Maxum.  Ord. at 2 (dkt #40).

claimants prevail as a matter of law and Maxum loses because it should have provided a defense to Ames.

## II. Factual Background

A.    <u>The Policy</u>

Ames was the general contractor on construction project to expand and upgrade the Missoula Wastewater Treatment Plant.  Intermountain was a vendor for the project and entered a Material/Equipment Supply Contract Agreement ("Contract") with Ames, under which it would supply gratings for use on a new splitter box at the Plant.  Scheduling Ord. at 4 (dkt #14).   The plans for the grating included the use of saddle clips, which were also supplied by Intermountain. Intermountain Statement of Uncontroverted Facts ("SUF"), ¶ 21; Maxum SUF, ¶ 7.  The Contract also contained an provision requiring Intermountain to "obtain and maintain insurance acceptable to AMES . . . which names AMES as an additional insured."  Ames SUF, ¶ 2.

Intermountain purchased a commercial general liability policy (the "Policy") from Maxum with a policy period from February 1, 2004 to February 1, 2005.   Intermountain SUF, ¶ 3.  Intermountain, though its insurance agent Western States, sought to add Ames as an additional insured under the Policy.  Id. at ¶ 4.  Intermountain paid one premium for the Policy, and there was no

3

additional premium for adding an additional insured.  Western States SUF, ¶33(e)-(g).  On February 9, 2004, Western States issued an Acord Certificate of Liability Insurance listing Intermountain as the insured and Ames as the Certificate holder and additional insured.  Ames Ex. E (dkt #26-5); Intermountain SUF, ¶¶ 5-6.  The Certificate stated that it "DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW."  Id.  Maxum's claim file does not contain a copy of the Certificate listing Ames as an additional insured because Western States had not forwarded a copy to Maxum.  Intermountain SUF, ¶ 7; Maxum SUF, ¶ 13.  The insurance quote that Intermountain received prior to purchasing the Policy did not state that it was a condition of coverage that Maxum receive a copy of the Certificate before coverage would be effective for additional insureds, although the quote did mention a condition precedent to coverage for a separate provision.  Western States SUF,  ¶ 56.

The Policy provides in pertinent part:

### ENDORSEMENT #4

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This Endorsement, effective **2/1/2004** at 12:01 A.M. Standard time, forms a part of Policy Number **GLP 6001144-01** issued to **Intermountain Industrial, Inc.** by Maxum Indemnity Company. This endorsement modifies insurance provided for under the

following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE)**

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS**

**Blanket as required by written contract and only if certificate of insurance has been provided to Company prior to date of loss.**

A.  **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability out of your ongoing operations performed for that insured.

B.  With respect to the insurance afforded to these additional insureds, the following exclusion is added:

2.  **Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

(1)  All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2)  That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

Ames Ex. C at 32 (dkt #26-3).  The Policy defines "your work" as "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations."  Id. at 22.  The

Policy also states that, "The words 'we,' 'us' and 'our' refer to the Company providing this insurance." Id. at 6.  The Policy does not contain a Schedule that lists additional insureds.  The corporate representative for Maxum, Peter DeJesso, described this as a "scribners error," and stated that the Policy was referring to the Certificate of Insurance, not a Schedule.   Intermountain SUF, ¶16; Western States SUF, ¶ 45. DeJesso stated that Maxum has no guidelines for applying  or interpreting Endorsement #4.  Intermountain SUF, ¶ 15; Western States SUF, ¶ 33. DeJesso stated the purpose of the clause which Maxum's believes requires an insured to send the Certificate of Insurance to Maxum is to "limit coverage." Western States SUF, ¶ 50.

B.    The Rhodes Injury and Litigation

On February 18, 2004, Timothy Rhodes, an employee of Missoula Wastewater Treatment Plant, was walking on grating that had been recently installed by Ames and supplied by Intermountain.  He fell into the wastewater below and suffered injuries.  At the time of his fall, the saddle clips supplied with the grating were not installed.  Ames SUF, ¶ 15; Intermountain SUF, ¶ 23.

On February 6, 2007, Rhodes and his wife filed suit against Ames in state court.  Ames Ex. F (dkt #26-6).  His complaint alleged he was "walk[ing] upon newly installed grating, which grating was on a walkway platform," and "[w]hen

6

Timothy stepped upon a section of aluminum grating, the grating section slipped off the support ledge, and the section and Timothy fell approximately 8 feet into the sewage flow splitter box." Id. at 2.  He also alleged that at the time he fell, "the newly installed grate section which slipped off its iron support ledge . . . was not anchored, clipped or fastened to the ledge, as required" by the constructions plans. Id. at 3.  Rhodes asserted Ames "knew or should have known that the subject grating piece did not properly fit onto the adjacent ledges tight enough to secure the grate into place, particularly without fasteners or clips." Id. at 4.

On May 1, 2007, Ames tendered its defense and indemnity to Intermountain and Maxum.  Scheduling Ord. at 4 (dkt #14); Ames SUF, ¶ 21.  On May 30, 2007, Maxum denied coverage for the claim because it did not have a Certificate of Insurance on file listing Ames as an additional insured and because the grating had already been delivered and installed.  Ames SUF, ¶ 23.  Ames, through its insurer, Traveler's Insurance, settled the Rhodes claim and paid $300,000 in April 2008.[2] Scheduling Ord. at 4 (dkt #14).

---

[2] In its opening brief, Maxum argues that Ames has no standing to bring this action because it is not the real party in interest and only Ames' insurer, Traveler's, may bring the action.  Ames responds that it is a real party in interest and has a ratification agreement with Traveler's regarding that case.  In its reply, Maxum agrees the ratification agreement gives Ames standing to bring this action.

## III.  Analysis

### A.    Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An adverse party may not rely on mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e). If there is no genuine issue of material fact, the court must determine whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

### B.    Montana Law Regarding an Insurer's Duty to Defend

The interpretation of an insurance contract is a question of law for the Court.  Babcock v. Farmers Ins. Exchange, 999 P.2d 347, 348 (Mont. 2000).  The Court will construe terms according to their usual, commonsense meaning.  Natl. Farmers Union Property & Casualty Co. v. George, 963 P.2d 1259, 1261 (Mont. 1998).  The interpretation should honor the objectively reasonable expectations of the insured.  Hanson v. Employers Mut. Ins. Co., 336 F. Supp. 2d 1070, 1075 (D. Mont. 2004).  Any ambiguities regarding coverage are construed against the

8

insurer. <u>Hanson</u>, 336 F. Supp. 2d at 1073. "An ambiguity exists when a contract taken as a whole is reasonably subject to two different interpretations." <u>Id.</u> (citation omitted). However, a policy provision is not ambiguous just because the parties disagree as to its interpretation, and "courts will not distort contractual language to create an ambiguity where none exists." <u>Giacomelli v. Scottsdale Ins. Co.</u>, 221 P.2d 666, 672 (Mont. 2009).

To determine if coverage exists, giving rise to a duty to defend, the insurer must look to the provisions of the policy and the allegations in the complaint. <u>Farmers Union Mut. Ins. Co. v. Staples</u>, 90 P.3d 381, 385 (Mont. 2004). An insurer's duty to defend arises when a complaint alleges facts, which if proven, would result in coverage under the terms of the policy. <u>Id</u>. "Where a complaint alleges facts which represent a risk outside the coverage of the policy but also avers facts which, if proved, represent a risk covered, the insurer is under a duty to defend." <u>Id</u>. Where there is a dispute as to coverage, "the insurer must defend. It may commence a defense under a reservation of rights while conducting an investigation, and it may commence a declaratory action." <u>Revelation Industries, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 206 P.3d 919, 928 (Mont. 2009). If an insurer unjustifiably refuses to defend a claim, the insurer is liable for costs incurred in the defense of the claim. <u>Farmers Union Mut. Ins. Co.</u>, 90 P.3d at 385.

The "protective purpose of an insurance policy and the obligation of the insurer to provide a defense require that coverage exclusions be narrowly construed." Farmers Union Mut. Ins. Co., 90 P.3d at 385. The insurer must construe factual assertions in a complaint from the perspective of the insured rather than from the insurer's own perspective. Farmers Union Mut. Ins. Co., 90 P.3d at 385. "When a court compares allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was 'triggered,' [the] court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." Id. If there is a dispute as to any fact relevant to coverage, the factual dispute must be resolved in favor of coverage. Id. Further, "[a]n insurer cannot ignore knowledge of facts that may give rise to coverage under the policy simply because the complaint does not allege these facts of which the insurer has knowledge." Revelation Industries, Inc., 206 P.3d at 928. "Unless there exists an unequivocal demonstration that the claim against the insured does not fall within the policy coverage, the insurer has a duty to defend." Farmers Union Mut. Ins. Co., 90 P.3d at 386.

**C.   Ames is an additional insured under the Policy because the Policy contains ambiguities that must be construed against Maxum.**

Ames, Intermountain, and Western States argue that Endorsement #4 is ambiguous and must be construed in favor of coverage for Ames as an additional insured.  Maxum counters that the Policy unambiguously required that Maxum receive a copy of the Certificate of Insurance before Ames legally was an additional insured.  Maxum also asserts it is irrelevant that the Policy referred to blanket coverage and to a non-existent schedule of covered parties in the same portion of the Policy.

Ames, Intermountain, and Western States are correct that Endorsement #4 is ambiguous because its terms are "reasonably subject to two different interpretations."  Hanson, 336 F. Supp. 2d at 1073.  First, there is ambiguity in the clause, "Blanket as required by written contract and only if certificate of insurance has been provided to Company prior to date of loss."  Ames Ex. C at 32 (dkt #26-3).  It is ambiguous to which entity the "Company" refers in this sentence.  There are three companies impacted by the additional insured provisions: (1) Maxum, the company providing the insurance; (2) Intermountain, the company that acquired the insurance; and (3) Ames, the company to be protected as an additional insured.  Nothing in that sentence specifies which company had to receive the Certificate for there to be coverage.  If the company referred to is Ames, for example, Ames had already received a copy of the Certificate on

11

February 9, 2004, thus establishing coverage.  Ames Ex. E (dkt #26-5).

Maxum argues that because the Policy states that "'we,' 'us' and 'our, refer to the Company providing this insurance," the Policy defines "Company" as referring to Maxum.  Ames Ex. C at 6 (dkt #26-3).  Contrary to Maxum's argument, the Policy specifies that Maxum will be referred to as "'we,' 'us' and 'our,'" not as "the Company."  If Endorsement #4 had stated that coverage for additional insured was "Blanket as required by written contract and only if certificate of insurance has been provided to [**us**] prior to date of loss," it would have been clear that Maxum had to receive the Certificate before there was coverage.  As written, the Policy relies on the undefined word "Company," rather than using Maxum's own definitions.  This ambiguity, created by Maxum's drafting, must be construed against Maxum.  <u>Hanson</u>, 336 F. Supp. 2d at 1073.

The Policy is also "reasonably subject to two different interpretations" as to what type of coverage it offers to an additional insured.  <u>Hanson</u>, 336 F. Supp. 2d at 1073.  Endorsement #4 uses two conflicting terms for the type of coverage provided: it states there is blanket coverage, as discussed above, and coverage that includes "as an insured the person or organization shown in the Schedule," although there is no such schedule attached to the Policy.  Ames Ex. C at 32 (dkt #26-3).  Maxum's corporate representative conceded that it was an error to refer to

a Schedule, but insists that what was meant instead of Schedule was Certificate. Intermountain SUF, ¶16; Western States SUF, ¶ 45.  Maxum does not, however, explain how it could be within the reasonable expectations of the insured to know that "Schedule" actually means Certificate of Insurance.  Such is the plight of the errant scrivener - - - mistakes of ambiguity are the ink from the pen of the writer.

Maxum argues it is irrelevant that the Policy refers to a  nonexistent schedule because Ames did not have coverage in the first instance due to the Certificate requirement.  As earlier stated, the ambiguity regarding the Certificate requirement must be construed in favor of coverage for Ames.  Maxum does not detail how to interpret the Policy if the Court finds the Certificate clause is ambiguous.  It is inconsistent for the Policy to refer to both blanket coverage and coverage pursuant to a schedule since the terms "blanket" and "schedule" refer to different types of coverage.  See e.g. Lee R. Russ & Thomas F. Segalla, Couch on Insurance vol. 3, § 40:29 (West 1997).  Blanket coverage "generally provides coverage for any person or organization to whom or to which the named insured is obligated to name as an additional insured," in contrast to a schedule, which specifically lists additional insured parties.  Id.  Endorsement #4 is thus subject to two interpretations as to the type of coverage is offers, and the ambiguity must be

construed in favor Ames to provide the type of coverage it contracted for: blanket coverage.  <u>Hanson</u>, 336 F. Supp. 2d at 1073.

Maxum makes several irrelevant arguments about whether Ames is an additional insured.  For example, Maxum repeatedly criticizes Western States for its alleged failure to acquire or read a copy of the Policy prior to Rhodes' injury. Western States disputes this characterization of the facts and claims it attempted to acquire a copy of the Policy, but Maxum was not responsive to its requests.  Even so, this factual dispute is not germane to the legal issue of interpreting the Policy's provisions.

Maxum also asserts it was not required to use any standard form and it is not uncommon for insurers to require receipt of a certificate of insurance before coverage takes effect.  <u>E.g.</u> <u>United Natl. Ins. Co. v. St. Paul Fire & Marine Ins. Co.</u>, 214 P.3d 1260, 1268-69 (Mont. 2009) (discussing insurance policy naming additional insureds as those for which a certificate of insurance had been issued and was on file).  Similarly, Maxum argues that the certificate of insurance, which stated that Ames was an additional insured, cannot by itself create coverage if none existed otherwise.  <u>Seal v. Hart</u>, 50 P.3d 522 (Mont. 2002) ("A certificate of insurance alone does not constitute a contract to procure insurance or impose a duty upon the certificate issuer to procure the same.").  Maxum did not have to use

14

a particular form.  The Certificate of Insurance could not create coverage on its

own.   However, these facts do not change Montana law regarding the

interpretation of ambiguous insurance contracts.  It is not the requirement that

Maxum receive a Certificate of Insurance, but the ambiguous terms in which this

requirement is phrased that is determinative here.

Endorsement #4 of the Policy is ambiguous about whether it offers blanket

coverage or coverage pursuant to a separate schedule.  It is also ambiguous

concerning which company must receive the Certificate of Insurance before there

is coverage.  The ambiguities must be construed against Maxum, so that Ames is

an additional insured under the Policy.[3]

**D.    The "intended use" exclusion of the Policy does not apply because the facts alleged do not unequivocally demonstrate that the claim falls outside the Policy.**

Maxum next argues that even if Ames was an additional insured under the

Policy, the "intended use" exclusion precludes coverage here because the grating

had been put to its intended use when it was installed as a walkway.   Maxum

claims it is irrelevant to the intended use exclusion that the grating may have been

---

[3] The parties also debate whether the coverage provided is illusory and outside the reasonable expectations of the insured if Maxum had to receive a Certificate before Ames was covered as an additional insured.  However, the Policy is ambiguous and should be construed against Maxum to allow coverage, so this argument is moot.

unsafe or unsatisfactorily installed, and whether the saddle clips were installed has no bearing on the intended use exclusion.  The other parties argue the intended use exclusion does not bar coverage here because the hardware that would have secured the grating, including the saddle clips, had not been installed and put to its intended use.  They also argue Maxum improperly engaged in unilateral factual determinations and ignored the allegations of the Rhodes complaint.

The Policy excludes coverage for injuries or damages occurring after "[t]hat portion of 'your work' out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project."  Ames Ex. C at 32 (dkt #26-3).  The Policy defines "your work" in part as "[m]aterials, parts or equipment furnished in connection with such work or operations."  Id. at 22.

The intended use exclusion does not prohibit coverage for the Rhodes injury.  When the Court "liberally construe[s] allegations in [the] complaint so that all doubts about the meaning of the allegations are resolved in favor of" finding coverage, a fair reading of the Rhodes Complaint establishes that Ames is entitled to coverage under the Policy.  Farmers Union Mut. Ins. Co., 90 P.3d at 385.  The question here is whether the Rhodes Complaint alleged that the portion of the

16

"[m]aterials, parts or equipment furnished in connection with such work or operations" out of which the injury arose had been put to its intended use at the time of the injury.  Maxum chooses to focus solely on the grating, which the Complaint alleges was "newly installed" and was arguably being put to its intended use when Rhodes walked on it.  Ames Ex. F at 2, 3 (dkt #26-6).  In doing so, Maxum overlooks additional allegations of the Complaint, which assert the grating "was not anchored, clipped or fastened to the ledge, as required" by the constructions plans, and Ames knew or should have known the grating was not secure, "particularly without fasteners or clips."  Id. at 3, 4.  Thus, while one portion of the materials at issue here – the grating – may have been installed, the Complaint alleged that another portion of the materials – the hardware necessary to safely secure the grating, such as the saddle clips – had not yet been put to its intended use.   Because there are facts in the Complaint that could give rise to coverage, and there is not "an unequivocal demonstration that the claim against the insured does not fall within the policy coverage," Maxum had a duty to defend Ames in the Rhodes lawsuit.  Farmers Union Mut. Ins. Co., 90 P.3d at 386.

Maxum cites two non-Montana cases to support its argument that the intended use exclusion applies.  Penn Natl. Ins. v. HNI Corp., 482 F. Supp. 2d 568 (M.D. Pa); Security Ins. Co. of Hartford v. Kaye Milling Supply, Inc., 211 N.W.2d

519 (Minn. 1973).  In Penn Natl. Ins., the district court found that a policy which contained a similar "intended use" exclusion barred coverage for damage caused by a house fire.  The fire was caused by improper installation of the vent in an indoor gas burning fireplace, which had been installed approximately two weeks before the fire.  The house was complete at the time of the fire, but had not yet been sold and was being used as a model home.  Penn Natl. Ins., 482 F. Supp. 2d at 572.  The court posed the issue as "whether [the sub-contractor's] work, not the entire home, was put to its intended use.  Therefore, the fact that the home was not yet sold is not material" to whether the intended use exclusion applied.  Id. at 612. In Security Ins. Co. of Hartford, a state court also construed an "intended use" exclusion where soybeans were stored in a new grain storage bin on which construction had not been fully completed.  Security Ins. Co. of Hartford, 211 N.W.2d at 520.   The bins were held up by towers with four legs, and a leg on one of the bins collapsed when the bin was filled with soybeans.  There was some remaining work to be done, including adding cross-bracing and bolting corner posts, but the parties agreed that the leg collapse caused the damage, although the evidence did not establish the reason for the collapse.  Id. at 520-21.  The court concluded the intended use exclusion in the contractor's insurance policy precluded coverage because storage of soybeans in the collapsed bin was "the

18

precise use for which the bin was constructed," and "[t]he damage did not arise out of negligence, incompetence, or defects in the process of actually erecting the structure, which were risks assumed by the insurer." Id. at 522.

Even if these two cases were persuasive, they are distinguishable from the present case and do not support Maxum's argument against coverage. In Penn Natl. Ins., unlike here, all construction was completed and all materials had been installed, even though the fireplace had been installed in a way that caused a fire. There were no allegations that there were additional materials that should have been installed, like the saddle clips here, that would have prevented the fire if put to their intended use. In contrast to Security Ins. Co. of Hartford, the Rhodes Complaint alleges the injuries "ar[o]se out of negligence, incompetence, or defects in the process of actually erecting the structure." Security Ins. Co. of Hartford, 211 N.W.2d at 522. Thus, even under the cases relied on by Maxum, the intended use exclusion does not preclude coverage for Ames.

Rather than "narrowly constru[ing]" the intended use exclusion, Maxum broadly construes it to preclude coverage. Farmers Union Mut. Ins. Co., 90 P.3d at 385. Maxum also chose to "ignore knowledge of facts that may give rise to coverage," particularly the facts alleged in the Complaint about the failure to use the proper materials to secure the grating. Revelation Industries, Inc., 206 P.3d at

928.  If Maxum believed the intended use exclusion applied, it could have

defended under a reservation of rights and commenced a declaratory action.  Id.

Maxum did not follow this prudent course of action, but instead flatly refused to

defend.  Because the refusal to defend was not consistent with the Policy and not

consistent with Montana law governing interpretation of insurance contracts,

Maxum "is liable for costs incurred in the defense of the claim."  Farmers Union

Mut. Ins. Co., 90 P.3d at 385.

## IV.  Conclusion

IT IS ORDERED, Ames', Intermountain's, and Western States' motions for

summary judgment (dkts  #24, #41, and 44) are GRANTED.  Maxum's motion for

summary judgment (dkt #48) is DENIED.  The ambiguities in the Policy must be

construed in favor of the insured and the uncontested facts in the underlying case

do not unequivocally preclude coverage.

IT IS FURTHER ORDERED that the parties are to submit a joint status

report to the Court within 30 days of the date of this Order as to the remaining

claims in this case.

The Clerk is directed to enter judgment in favor of Plaintiff Ames

Construction, Inc., Defendant/Third Party Plaintiff Intermountain Industrial, Inc.,

and Third Party Defendant Western States Insurance Agency, Inc., and against

Defendant Maxum Indemnity Company in accordance with this order.

The Clerk is directed to notify the parties of the entry of this Order and

Judgment.

Dated this 28th day of April, 2010.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT

21